**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

ATTACHMENT 3

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Plaintiff**

**Irving F. Rounds, Jr. 246 Beacon Street Apartment 1 Clinton, MA 01510**

**v.**

**Defendant#1**
**Charles Koch P.O. Box 2256 Wichita, KS-67201-2256**

**Defendant#2**
**David Koch 740 Park Avenue Manhattan New York 10021**

**Defendant#3**
**United States Government Department of**
**Justice**
**U.S. Deputy Attorney General Rod Rosenstein**
**Special Counsel and former F.B.I. Director Robert Mueller**
**Congressman Robert Goodlatte Chairman of the DOJ's oversight committee**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Civil Action**
**NO 4:18-CV-**
**40066-DHH**
The Plaintiff files
A motion to
Amend
The Plaintiffs
Complaint

          **PARTIES**

1. Plaintiff: Irving F. Rounds, Jr. is an individual residing at 246 Beacon Street Apartment 1, Clinton MA 01510 "Mailing addresses P.O. Box 324, Clinton, MA 01510."



2. Defendant #1, Charles Koch is an individual who resides in Wichita Kansas and has a mailing address of P.O. Box 2256 Wichita, KS-67201-2256

3. Defendant #2 David Koch is an individual who resides at 740 Park Avenue Manhattan New York 10021

4. Defendant #3 Department of Justice, which is a Department of the government of the United States of America, which maintains offices in Washington, D.C.

## JURISDICTION

5. Jurisdiction is claimed under 28 USC Chapter Spc. 1343

## Motion 2

6. Plaintiff incorporates by reference as though set forth in full here at all of the allegations contained in paragraph 1 through and including 5 hereof.

7. The Plaintiff files a motion to amend the Plaintiffs complaint (see attached amended complaint 11 pages).

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**ATTACHMENT 4**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Plaintiff**
**Irving F. Rounds, Jr. 246 Beacon Street Apartment 1 Clinton, MA 01510**

**v.**

**Defendant#1**
**Charles Koch P.O. Box 2256 Wichita, KS-67201-2256**

**Defendant#2**
**David Koch 740 Park Avenue Manhattan New York 10021**

**Defendant#3**
**United States Government Department of**
**Justice**
**U.S. Deputy Attorney General Rod Rosenstein**
**Special Counsel and former F.B.I. Director Robert Mueller**
**Congressman Robert Goodlatte Chairman of the DOJ's oversight committee**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

## PARTIES

1. Plaintiff: Irving F. Rounds, Jr. is an individual residing at 246 Beacon Street Apartment 1, Clinton MA 01510. "Mailing addresses P.O. Box 324, Clinton, MA 01510."

2. Defendant #1, Charles Koch is an individual who resides in Wichita Kansas and has a mailing address of P.O. Box 2256 Wichita, KS-67201-2256

3. Defendant #2 David Koch is an individual who resides at 740 Park Avenue Manhattan New York 10021

4. Defendant #3 Department of Justice, which is a Department of the government of the United States of America, which maintains offices in Washington, D.C.


## JURISDICTION

5. Jurisdiction is claimed under 28 USC Chapter Spc. 1343

6. Plaintiff incorporates by reference as though set forth in full here at all allegations contained 1 through 5 hereof.

### Count One-Coercion

7. The Plaintiff starting in the spring of 1997 while living in Palm Harbor Florida and working at Airtron Heating & Air Conditioning Oldsmar FL as a senior HVAC technician in the Tampa Bay Florida area, had anonymously called the Boston regional EPA field office and had spoken with Wayne Tolland, who at the time Mr. Tolland had told the Plaintiff that he was the supervisor for enforcement of Violations of the Clean Air Act. The Plaintiff asked Mr. Tolland that if there was any ongoing major illegal venting of refrigerants in the greater Boston area, specifically refrigerant 22. Mr. Tolland said no there wasn't.

8. The Plaintiff went on to state that he knew at the time not only through his coworkers, but with other people that the Plaintiff had met and spoke with from other companies, at different supply houses and at seminars that most of the companies in the greater Tampa Bay Florida area were illegally venting refrigerants in direct violation of the Clean Air Act. Mr. Tolland said what the Plaintiff was describing was major and he was going to contact his EPA headquarters in Washington DC and the DOJ. Mr. Tolland told the Plaintiff to call the Atlanta Georgia EPA criminal investigation division (CID) to get the phone number for the EPA's CID field office in Tampa FL and call the Special Agent in charge, which the Plaintiff did.

9. Mr. Tolland said that he would contact the DOJ not only because of the venting of refrigerants, but what the Plaintiff also had told him, that the Plaintiffs former employer at the time Airtron Inc. located at 210 Douglas Road East, Oldsmar, FL 34677 was not only forcing the Plaintiff against his will, but the Plaintiffs co workers also, to vent refrigerants, exploit the elderly with high pressure sales tactics, by instructing them to sell them things that they didn't need and also to keep quiet about severe mold problems being created by some of the HVAC systems that Airtron was installing. The severe mold in the duct systems

was making some people sick and in rare cases where some people are highly allergic to mold, they died. Like a young boy that died in New Port Richey Florida.

10. The upper management at Airtron and Group MAC (Airtron's parent company at the time) which had just purchased Airtron and had just went public, didn't want any negative publicity that would have dramatically caused Group MAC's stock price to drop. They were also afraid of a job that Airtron had just installed at Lawrence Beltz personal home located at 1731 Bright Waters N.E. in Saint Petersburg Florida. Mr. Beltz's home had severe mold throughout his duct systems, which was caused by Airtron's miss designed, poorly installed and the use of sub standard materials used on Mr. Beltz's HVAC systems on his brand-new construction home.

11. Mr. Beltz at the time was a prominent Attorney and owned a very large Law firm that served the greater Tampa Bay Florida area. Airtron also did not honor their contract with Mr. Beltz in the installation of Mr. Beltz's HVAC systems, in the form of not hooking up his heat recovery units, venting refrigerant R-22 at his home and selling him electrostatic air-filters that he had all ready purchased in his base construction contract.

12. Defendants 1 and 2 had a personal and business relationship with Group MAC's founder billionaire Gordon Cain who is now decease. Defendants 1 and 2 at the time had owned substantial stock shares in Group MAC. Defendants 1 and 2 along with Mr. Cain and the upper management of Group MAC thought that if Mr. Beltz ever found out what was going on at his home, that it would have started massive class action Law Suits, not only against Group MAC and Airtron but against the whole HVAC industry which was told to the Plaintiff through one the Plaintiffs former coworkers at Airtron.

13. Defendant 3 coerced the Plaintiff through its agent, Special Agent Daniel Green, an agent of the Environmental Protection Agency's Criminal Investigation Division (CID), at its Tampa FL field office. Special Agent Green coerced the Plaintiff under false pretense to come forward as a whistleblower/informant against the Plaintiffs former employer at the time and other local H.V.A.C. companies that were in violation of the Clean Air Act.

14. On or about January 7, 1998, the Plaintiff met with Defendant 3 through its agent Special Agent Daniel Green, at the EPA's Tampa FL field office. The Plaintiff had spoken with Mr. Green over the phone prior to the January 7th, 1998 meeting several times leading up to the meeting and had spoke with Mr. Tolland and the Atlanta CID anonymously until the meeting on January 7th, 1998 where the Plaintiff disclosed his full name and personal information.

15. The Plaintiff negotiated a verbal agreement with the Defendants 3 Special Agent Daniel Green, to disclose certain violations of the Clean Air Act, by his then employer and various other air conditioning installation firms in return for immunity, anonymity, complete witness protection and status under the various applicable whistleblower statutes.

16. The Plaintiff had received death threats and requested complete witness protection for legitimate concerns for his and his then ex-wife's safety. The Plaintiffs then employer Airtron was informed by the Plaintiffs coworkers that he was going to report his employer of violations of the Clean Air Act and blow the whistle on how Airtron was exploiting the elderly and the severe mold problems in some of the HVAC systems that Airtron had installed as outlined in the complaint, attachments and exhibits. The Plaintiff had disclosed to Defendant 3's Agent in their January 7th, 1998 meeting and over the phone leading up to the meeting.

17. Because of said agreement, the Plaintiff did disclose information to Defendants 3's Agent regarding the practice of illegal venting of refrigerant 22 naming his then employer and others in greater Tampa Bay Florida area and he was assured that action would be taken and that the investigation would not exceed a one-year period in both their January 7th, 1998 meeting and discussing it over the phone prior to the meeting.

18. The Plaintiff contacted Defendant 3's Agent once or more times every sequential year, starting from January 1998 to the present. The means of contact were by regular and electronic mail, phone and through the Plaintiff's Attorneys. The Plaintiff specifically contacted Defendant 3's Agent to find out the status of the Defendant 3's investigation and the Plaintiff's verbal agreement. Defendant 3 the last 10 plus years, has been filtering, in some cases blocking and editing all the Plaintiff's incoming and outgoing regular, electronic and FedEx mail as outlined in the complaint and exhibits.

19. Defendant 3 through its agent Special Agent Daniel Green failed to provide the benefits agreed upon at the January 7th, 1998 meeting, as a result the Plaintiff suffered substantial losses, due to being terminated from his various employers. Then being blacklisted as a whistleblower/informant by Defendants 1 and 2. Because Defendant 3 did not provide complete witness protection, which has left the Plaintiff in constant fear for his safety because of retribution not only from Defendant 3, but also from Defendants 1 and 2 and all the parties involved as outlined in the complaint, attachments and exhibits. The Plaintiff has suffered a medical condition in the form of emotional distress because of this.

20. Defendants 1 and 2 worked in coercion with Defendant 3 to entrap the Plaintiff twice in January of 1998. Defendants 1 and 2 had told Defendant 3 through their Agents that the Plaintiff had personally sabotaged Mr. Beltz's HVAC systems and the Plaintiffs motive was to tell Mr. Beltz and have Mr. Beltz compensate the Plaintiff on proceeds from any Law Suits that would have arisen from that.

21. Defendants 1, 2 and 3 worked in coercion with Beltz through their respective Agents to entrap the Plaintiff twice for extortion at Mr. Beltz home in January 1998. Defendant 3's agent, an undercover FBI Agent going by the name of Cecil from Denver Colorado and supposed friend of Mr. Beltz, tried to coerce along with Mr. Beltz, the Plaintiff into staring

a class action Law Suit, regarding severe mold within Mr. Beltz HVAC systems. One of the Plaintiffs former co workers had told the Plaintiff of how Defendants 1,2, and 3 had planned this whole elaborate event at Mr. Beltz's personal home located at 1731 Bright Waters N.E. Saint Petersburg Florida to entrap the Plaintiff for extortion.

22. Defendants 1 and 2 continue to relentlessly harass, threaten and intimidate the Plaintiff, the Plaintiffs family and friends.

23. Defendants 1 and 2 had their agents coerce and pay one of the Plaintiffs' former Attorneys Claude Lavallee to break his Attorney client relationship, along with Attorney Lavallee's private investigator, Ed Burke from Colleran Investigative Services, who broke his Nondisclosure Agreement with the Plaintiff. Both Mr. Lavallee and Mr. Burke broke their respective agreements with the Plaintiff to learn more about the Plaintiffs' Legal situation and his invention.

24. Defendants 1 and 2 have personally directed and ordered their agents to coerce individuals, entities and over 50 companies involved for the last 21 years to relentlessly harass, threaten and intimidate the Plaintiff and the Plaintiffs family and friends as outlined in the complaint and exhibits. Defendants 1 and 2 through their agents tried to coerce the Plaintiff to go work for these companies and coerced some of them to use their place of business to stage work place accidents in an effort to purposely hurt the Plaintiff, so Defendants 1 and 2 could now say the Plaintiff is some type of slip and fall expert and along with other reasons as outlined in the complaint and the exhibits.

25. In December of 2000 Defendants 1 and 2 through their agents, directed and ordered the agents to coerce the owners of Gentest Corporation of Woburn MA to sell its company to BD Bioscience, which at the time Defendants 1 and 2 owned most of the stocks at BD Bioscience. The Plaintiffs brother-in-law worked at Gentest at the time, Defendants 1 and 2 motives was to intimidate the Plaintiff in the form of letting the Plaintiff know the power and influence it can wield, not only against the Plaintiff, but the Plaintiffs family and friends.

### Count Two- Collusion

26. Defendants 1, 2 and 3 have been working in collusion in one form or another to relentlessly harass, threatening and intimidating the Plaintiff, the Plaintiffs family and friends, from approximately the second week of January 1998 to the present as outlined in the complaint and exhibits.

## Count Three- Harassment

27. Defendant 3 harassed the Plaintiff in the form of threatening to falsely arrest the Plaintiff three different occasions, staging a fake car accident on March 5th 2015 with the Plaintiffs ex wife in an effort to hack into the Plaintiffs computer, on April 6th, 2017 hacked into one of the Plaintiffs Attorneys computer Louis Vitiello, to send the Plaintiff and one of the Plaintiffs Attorney Steve Crowne an email so we would click on the bogus document so Defendant 3 could hack into the Plaintiffs computer and the Plaintiffs Attorneys computers, as outlined in the exhibits.

28. Defendant 3 verbally warned and discouraged two of the Plaintiff's Attorneys in representing the Plaintiff.

29. Defendant 3 again now is in the planning stages and contemplating to falsely arrest the Plaintiff again by staging a major national news event in Wisconsin in April 2017 as it directly relates to the Plaintiff and would give Defendant 3 "so called" justification as such to falsely arrest the Plaintiff (as outlined in the exhibits). Defendant 3 staged this event because Defendant 3 was aware that the Plaintiff was just ready to file a Lawsuit civil action NO.4:17-CV-40072-TSH. This latest threat from Defendant 3 and the harassing emails and threatening phone calls is causing the Plaintiff to suffer from emotional distress.

30. Defendants 1 and 2 through their agents planted a pedophile/sex offender at the Plaintiff's best friend George O'Neil's house, in the form of renting a room from his sister Patty. Then Defendants 1 and 2 agents anonymously called the Massachusetts State Police to raid the O'Neil residence, which was to not only discredited Mr. O'Neil directly, but to discredit the Plaintiff in directly if this whistle blowing case ever goes public and would go into Defendants 1 and 2 agents narrative that the Plaintiff is a pedophile/sex offender.

31. Defendant 3 through its Deputy Attorney General Rod Rosenstein has personally over saw the day to day operation as it relates to the Plaintiff blowing the whistle on Airtron on January 7th, 1998.

32. Defendant 3 through Special Counsel and former F.B.I. Director Robert Mueller personally while being the former FBI director and Special Counsel has approved this relentless harassment, threatening and intimidation perpetrated by the FBI towards the Plaintiff.

33. Defendant 3 through Congressman Robert Goodlatte Chairman of the DOJ's oversight committee along with his committee and former congressmen Jason Chaffetz and the EPA's oversight committee are aware of how the Plaintiff has been treated by Defendant 3 by all the correspondence sent by fax and FedEx along with a motion filed in Civil action NO. 17-40072-TSH. Both oversight committees have allowed Defendant 3 in its pursuit to

take Legal action against Defendants 1 and 2 and all the individuals and entities involved to harass the Plaintiff.

34. Defendants 1, 2 and 3 have been relentlessly harassing the Plaintiff in one form or another to date. All of the Defendants have been relentlessly harassing, threatening and intimidating the Plaintiff, the Plaintiffs family and friends, from approximately the second week of January 1998 to the present, as outlined in the complaint and exhibits.

## Count Four- Fraud

35. Defendant 1 and 2 committed acts of fraud in the form of trying to a ledge that the Plaintiff was a sex offender/pedophile and a thief through their agents by having their agents stage multiple events in the process of it as outlined in the complaint and exhibits.

36. Defendant 3 committed an act of Fraud by reporting that the Plaintiff was involved in homegrown (domestic) terrorism and alleging that the Plaintiff was an environmental terrorist (eco terrorist). Defendant 3 staged this event to illegally keep the Plaintiff involved in the Defendant 3 investigation of Defendants 1 and 2 and the other parties, as outlined in the complaint and exhibits.

37. Defendant 3 also committed other acts of Fraud in many other instances to the present date, as outlined in this complaint, attachments and exhibits, in this 20 plus year relentless harassment of the Plaintiff. Such as when Defendant 3 in April 2017 staged a major news event in Wisconsin (see exhibits) to give Defendant 3 "so called justification" to falsely arrest the Plaintiff by saying that the Plaintiff was a copycat to what Defendant 3 staged in Wisconsin.

## Count Five-Obstruction of Justice

38. Defendant 3 Obstructed Justice by pressuring the Office of Administrative Law Judges United States Department of Labor, Federal Building 10 Causeway Street, Room 411 Boston, MA 02222 and its Administrative Law Judge Timothy J. McGrath. Judge McGrath was pressured to not relinquish the DOL's and DOJ's respective investigations as it relates to the Plaintiff reporting its former employer and other companies to Defendant 3's Agent, Special Agent Dan Green on January 7th, 1998 as outlined in this complaint, and exhibits.

39. Defendant 3 also committed other acts of Obstruction of Justice in many other instances to the present date, as outlined in this complaint and exhibits, in this 20 plus year relentless harassment of the Plaintiff.


## Count Six-Conspiracy


40. Defendants 1 and 2, committed many acts of conspiracy towards the Plaintiff, in the different forms. As outlined in the complaint and exhibits.

41. Defendant 3 committed acts of Conspiracy by conspiring together with the upper management of the other branches of the U.S. Government in this 20 plus year relentless harassment of the Plaintiff to the present date as outlined in the complaint and exhibits. The branches and some of the managers include the following:

EPA: Special Agent Dan Green Criminal Investigation Division (CID)Tampa FL field office, Gwendolyn Keyes Fleming, the Regional Director for Region 4, A. Stanley Meilburg Deputy Regional director for Region 4, Mary Wilkes Director and the Regional Director for the Office of Environmental Accountability Regional 4 EPA, Cynthia Giles the Assistant Administrator for EPA Enforcement and Compliance and Lawrence Starfield Principal Deputy Assistant Administrator for EPA Enforcement and Compliance

DOJ and FBI: Former U.S. Attorney General Eric Holder, former U.S. Attorney General Loretta Lynch, former FBI Director Luis Freeh , Special Counsel and former FBI Director Robert Mueller, former FBI Director James Comey, current FBI Director Christopher Wray, former Deputy Director Andrew McCabe, former Boston MA U.S. Attorney Carmen Ortiz, current Boston MA U.S. Attorney Andrew Lelling, Boston MA Assistant U.S. Attorney Rayford A. Farquhar, Boston MA Assistant U.S. Attorney Ellen Souris, Boston MA Assistant U.S. Attorney Joshua Prada and Boston MA Assistant U.S. Attorney Keara Martin, Current Boston FBI Special Agent in charge Harold A Shaw and former Boston FBI Special Agent in charge Richard DesLauriers

Department of Labor (DOL): DOL investigator Anthony C. Maida, DOL Administrative Law Judge Timothy J. McGrath, DOL David M. Zeija Attorney-Advisor, DOL Vikram Singh Legal Assistant

42. Defendant 3 also committed other acts of Conspiracy in many other instances to the present date, as outlined in the complaint and exhibits in this 20 plus year relentless harassment of the Plaintiff.

## Count Seven-Mail Fraud

43. Defendant 3 has committed Mail Fraud against the Plaintiff in the form of blocking and or editing all the plaintiffs regular, FedEx and electronic mail to the present date, as outlined in the complaint and exhibits.

## Count Eight-Invasion of Privacy

44. Defendants 1 and 2 through their agents coerced and paid the McLaughlin residence located 23 3rd Street Medford MA, to bug the apartment prior to the Plaintiff and the Plaintiffs ex-wife moving in and while renting from the McLaughlin's from 1999 to 2000. Defendants 1 and 2 through their agents were illegally spying on the Plaintiff and his ex wife while living there by using video and audio equipment their agents had installed and going through all the Plaintiff's personal things in the apartment while the Plaintiff and the Plaintiffs ex-wife weren't home. The Defendants were having their agents spy on the Plaintiff to find out about the status of the Plaintiffs whistle blowing case and the Plaintiff's invention.

45. Defendants 1 and 2 were harassing the Plaintiff by spying on the Plaintiff in the form of videotaping and audio recording the Plaintiff while being employed at the Plaintiff's various employers, as outlined in the complaint and exhibits.

46. Defendants 1 and 2 have been using their private investigators (agents) to harass the Plaintiff by following (tailing) the Plaintiff on a day to day basis, such as going out to the gym, shopping and etcetera. This has been another form of Defendants 1 and 2 to harass and spy on the Plaintiff since approximately the spring of 1997 to the present date.

47. Defendant 3 has been using the same satellite technology used to arrest the Russian spies arrested several years ago in New York and in Cambridge MA. Defendant 3 is using this to keep both the Plaintiff and the Plaintiffs best friend George O'Neil under constant surveillance to the present date as outlined in the complaint and exhibits.

48. Defendant 3 created a hostile work environment on or about August 2011 for the Plaintiff in the form of whistle blower retaliation from his former employer Life Technologies located at 35 Wiggins Ave. Bedford MA 01730. Defendant 3 had its agent

(undercover F.B.I. Agent) going by the name of Meg Reilly strategically placed a camera (see picture exhibit) pointed at the Plaintiffs work cube area. The Plaintiff was forced to quit his job do to whistle blower retaliation, which created a hostile work environment and emotional distress for the Plaintiff.

49. Defendant 3 also had bugged the Plaintiffs 2008 Ford Econoline Van and his 2004 Subaru Outback personal automobiles.

## Count Nine Abuse of Process

50. Defendant 3 broke the Law on many instances to the present date as outlined in the complaint and exhibits against the Plaintiff in the process of pursuing and taking Legal action against Defendants 1 and 2 and all the different parties involved in this Legal matter.

Wherefore the plaintiff demands judgment from each Defendants 1, 2 and 3 for compensatory damages.

Wherefore the plaintiff demands judgment from each Defendants 1, 2 and 3 in punitive damages from each defendant for malicious and will-full misconduct.

Wherefore the Plaintiff demands Consequential (special) damages against Defendant 1 in the form of the following things. They are as followed:

1.) Wherefore the plaintiff demands judgment from Defendant 1 for Consequential (special) damages.
2.) Defendant 1 further agrees to no longer harass and or stalk the Plaintiff, the Plaintiffs family and friends.

Wherefore the Plaintiff demands Consequential (special) damages against Defendant 2 in the form of the following things. They are as followed:

1.) Wherefore the plaintiff demands judgment from Defendant 2 for Consequential (special) damages.
2.) Defendant 2 further agrees to no longer harass and or stalk the Plaintiff, the Plaintiffs family and friends.

**Wherefore the Plaintiff demands Consequential (special) damages against the Defendant 3 in the form of the following things. They are as followed:**

1) A special fire arms permit will be issued to the Plaintiff to carry a concealed fire arm anywhere and one for the Plaintiff's body guards, if the Plaintiff ever hires any, for the Plaintiff's defense.
2) The Plaintiff is to be issued a Pipe Fitters License issued to the Plaintiff. The Plaintiff was told that the FBI told the Mass DPS to not to issue it to the Plaintiff, even though Plaintiff passed the exam on April 1st, 2011.

**Wherefore the Plaintiff demands a trial by Jury.**

Date 7/2/18

Irving F. Rounds Jr.

Initials

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

**ATTACHMENT 5**

************************
Plaintiff
Irving F. Rounds, Jr. 246 Beacon Street Apartment 1 Clinton, MA 01510

v.

Defendant#1
Charles Koch P.O. Box 2256 Wichita, KS-67201-2256

Defendant#2
David Koch 740 Park Avenue Manhattan New York 10021

Defendant#3
United States Government Department of
Justice
U.S. Deputy Attorney General Rod Rosenstein
Special Counsel and former F.B.I. Director Robert Mueller
Congressman Robert Goodlatte Chairman of the DOJ's oversight committee

**************************

**Civil Action**

**NO <u>4:18-CV-</u>**
       **<u>40066-DHH</u>**
The Plaintiff files
A motion to
Have defendant 3
stop harassing the
Plaintiff

## <u>PARTIES</u>

1. Plaintiff: Irving F. Rounds, Jr. is an individual residing at 246 Beacon Street Apartment 1, Clinton MA 01510. "Mailing addresses P.O. Box 324, Clinton, MA 01510."

2. Defendant #1, Charles Koch is an individual who resides in Wichita Kansas and has a mailing address of P.O. Box 2256 Wichita, KS-67201-2256

3. Defendant #2 David Koch is an individual who resides at 740 Park Avenue Manhattan New York 10021

4. Defendant #3 Department of Justice, which is a Department of the government of the United States of America, which maintains offices in Washington, D.C.

## JURISDICTION

5. Jurisdiction is claimed under 28 USC Chapter Spc. 1343

## Motion 3

6,) The Plaintiff files a motion to have Defendant 3 stop harassing the Plaintiff in the form of sending bogus emails (see exhibits pages 249 through 255) supposedly from one of the Plaintiffs' Attorneys involved in this Legal matter, blocking and or editing all the Plaintiffs incoming and outgoing regular, electronic and FedEx mail, stop interrupting and or blocking the Plaintiff's new cable service provider digital communication service into the Plaintiff's apartment (see exhibits pages 256 through 285) and the harassing phone calls.

From: **Irv Rounds**
roundsmechanical@verizon.net
Subject: **Re: IMPORTANT DOCUMENT**
Date: **Jun 22, 2018 at 2:25:26 PM**
To: **Todd Mohr**
michealharry14@mail.com

**Hi Todd,**

**I just texted Gaytri saying that I have been receiving some bogus emails. So please reply back with the correct office phone number because I tried calling the one that was listed on the email and it came up as a disconnected number. Please advise.**

**Thanks,**

**Irv Rounds**

**Sent from my iPhone**

On Jun 22, 2018, at 1:18 PM, Todd Mohr <TMohr@aerotek.com> wrote:

EXHIBIT PAGE 248

Hello.

Check the new important document from Docu Sign CLICK HERE let me know if you receive it


THANKS,

Dr. Gaytri D. Kachroo
Principal
KLS -KACHROO LEGAL SERVICES, P.C.
236 Concord Ave. Ste 2
Cambridge, MA 02138
Office:  781-599-2109
Facsimile: 1-781-599-0862


EXHIBIT PAGE 249

Mobile: 774-232-2865
http://www.kachroolegal.com/

This message may contain information which is privileged and/or confidential under applicable law. If you are not the intended recipient or such recipient's employee or agent, you are hereby notified that any dissemination, copying or disclosure of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us. Please delete and empty this communication without making any copies. Thank you. // Ce message est confidentiel, peut être

protégé par le secret professionnel, et est à l'usage exclusif du destinataire. Toute autre personne est par les présentes avisée qu'il lui est strictement interdit de le diffuser, distribuer ou reproduire. Si vous avez recu ce message par erreur, veuillez nous en aviser immédiatement et détruire ce message. Merci.

EXHIBIT PAGE 251

Hi Irv: this was a spam email sent by someone else not me! Apologies. This is a good phone number for me! Thanks! Best, Gaytri

EXHIBIT PAGE 252

Thanks Gaytri!

me. I took a pic-
ture of it and
please verify that
you folks did in
fact send that to
me. Also text me
a good office
phone number
likewise. Thanks
Irv Rounds

Hi Irv, this was a

Hi Gayth this is Irving Rounds and I supposedly received an email from Todd Mohr from your office, can you please have him call me when you have a chance because I've been having

EXHIBIT PAGE 254

## Todd Mohr

Details

# IMPORTANT
# DOCUMENT

Today at 1:18 PM

Hello.

EXHIBIT PAGE 255

Check the new important document from Docu Sign

From: Irv Rounds
roundsmechanical@verizon.net
Subject: Fwd: Comcast cable
Date: Jul 1, 2018 at 1:04:28 PM
To: janice_falzone@comcast.com
Cc: brian_roberts@comcast.net

Dear Ms. Falzone,

Just to recap part of our conversation on Friday June 15th and the emails going back and forth on this email string. I would like to point out a few things.

I would also like to go over some of the key notes of our phone discussion. They are as follows:

1.) I made 3 reasonable requests that you called demands based on how Comcast has not honored its service agreement with me in the form of letting the Department of Justice (DOJ) harass me by jamming my Comcast Digital signals which is well documented. I allowed you to get back to me, but you said that you had the authority to speak in Comcast's CEO's and

EXHIBIT PAGE 256

Chairmen of the board Brian Roberts behalf, who Cc on this email. You respectfully declined all 3 requests.

2.) I told you how that it's well documented not only with John Keys but also many other senior Comcast representatives including your Comcast's customer security quality assurance department, that the DOJ has been harassing me by jamming my Comcast digital signal.

3.) I gave you a brief back-round on the motive why the DOJ is harassing me and suggested that you would have to read the 30-page complaint filed against Charles and David Koch, the DOJ, U.S. Deputy Attorney General Rod Rosenstein, Special Counsel and former FBI Director Robert Mueller and Congressmen Robert Goodlatte Chairman of the DOJ's

EXHIBIT PAGE 257

oversight committee. This way Comcast might take it more seriously.

4.) You said that Comcast takes customers privacy very seriously, so if that's the case why didn't Comcast stop the DOJ from harassing me? So, it must be because you said that your customer security quality assurance department, your senior tech John Scott and others had concluded in their respective investigations that the DOJ and or no other parties are in fact (illegally) jamming my Comcast digital signal into my apartment within Comcast's communication infrastructure. You said that Comcast 100% guarantees that they have checked all of Comcast's communication infrastructure to make sure that the DOJ is not within communication infrastructure. That's

EXHIBIT PAGE 258

whether Comcast is willingly or un willingly letting the DOJ inside Comcast's communications infrastructure.

5.) You said that if I wasn't happy with Comcast I should find another provider. I explained to you in detail what happened to me with Verizon (as outlined in the complaint) the only other service provider in Clinton. You also said in so many words either take it or leave it.

6.) You had told me that Comcast is in the business of providing entertainment services such as movies and television services. What you lacked to say is that you are also in business to provide voice services.

7.) I told you that I had lost at least 20 years off my life and suffered huge financial losses

because of this whistle blower case I'm involved in and I said that by Comcast allowing the DOJ to harass me in the form of jamming my Comcast Digital signal to my apartment the last plus year or so, it was physically and financially harming me.

8.) On this email string I had formally requested a copy of Comcast's respective investigations and you said that Comcast would not provide them.

9.) I attached some of the copies of faxes that failed do to communication errors during the fax transmission. I gave your senior technician John Scott, who was in my apartment at the time and doing batteries of tests 4 of those pages as proof of my service issues.

10.) I inspected the Comcast telephone line that was provided to me by Comcast for any foreign things on it. Your senior service technician John Scott said that it was possible that something might have been installed on it which there isn't.

11.) I have decided not to hire a cyber security professional. I based that decision on what I said to you over the phone. I personally feel that the DOJ is within Comcast communication infrastructure. I base that opinion on what I told you with my problems with Verizon and myself and as outlined in the current complaint that is filed against the Koch brothers and the DOJ.

In closing I feel that Comcast is not being forth coming about this matter for whatever reason, so I'm forced to cancel my Comcast service with Comcast, because I feel that Comcast is treating

me with unfair and deceptive business practices towards myself. I will drop off my Comcast equipment at one of your service centers within the next week or so.

Thank you,

Irving F. Rounds Jr.
246 Beacon Street Apartment 1
Clinton, MA 01510

Tap to
Download
Comc...s.pdf
22.7 MB

Tap to
Download
Comc...8.pdf
2.7 MB

My apologies for the delay in responding, I have
been attending to other issues.

No one outside of Comcast is going to have access to our network. No one should be accessing our equipment unless it is an authorized Comcast technician/engineer or the authorized manufacturer.

What I can advise you is that what you have been experiencing has not been due to anything on Comcast's network or equipment. Your service is working as intended and within our specifications. Any external investigation to

your concerns will need to be on your owned devices.

Janice Falzone
Executive Customer Relations
GBR Womens Network – Communications Co-Lead
Comcast|Greater Boston Region
Office: 888/309-2583 ext 5635352
**Monday – Friday 8:00 a.m. – 4:30 p.m. I**

From: Irv Rounds
[mailto:roundsmechanical@verizon.net]
Sent: Friday, June 22, 2018 2:09 PM
To: Falzone, Janice
<Janice_Falzone@cable.comcast.com>
Subject: Fwd: [EXTERNAL] Fwd: Comcast cable

Hi Ms. Falzone,

The only reason why I'm looking for a clarification is because you used the words equipment and service.

So again if and when I hire someone to come out and look at my computer's, again they wouldn't have to look at anything related to Comcast service and or equipment. Please advise.

Thank you,

Irving F. Rounds Jr.
246 Beacon Street Apartment 1
Clinton, MA 01510

Sent from my iPhone

Hi Ms. Falzone,

So you just replied back by saying No they will only be able to investigate your service and your equipment. At this time Comcast feels any interference with your service is outside Comcast network.

So when you say No they will only be able to investigate your service and your equipment. You mean my own personal service and equipment such as my AOL email account and

personal computers. Is that correct?

You don't mean my Comcast service and Comcast equipment. Is that correct? Please advise.

Thank you,

Irving F. Rounds Jr.
246 Beacon Street Apartment 1
Clinton, MA 01510

Begin forwarded message:

From: Irv Rounds
<roundsmechanical@verizon.net>
Date: June 22, 2018 at 12:11:38 PM EDT
To: janice_falzone@comcast.com

EXHIBIT PAGE 268

**Subject:** Fwd: [EXTERNAL] Fwd: Comcast cable

No they will only be able to investigate your service and your equipment. At this time Comcast feels any interference with your service is outside Comcast network.

Janice Falzone
Executive Customer Relations
GBR Womens Network – Communications Co-Lead
Comcast|Greater Boston Region
Office: 888/309-2583 ext 5635352
**Monday – Friday 8:00 a.m. – 4:30 p.m.**

From: Irv Rounds
[mailto:roundsmechanical@verizon.net]

Sent: Friday, June 22, 2018 11:18 AM
To: Falzone, Janice
<Janice_Falzone@cable.comcast.com>
Subject: Fwd: [EXTERNAL] Fwd: Comcast cable

Hi Ms. Falzone,

I'm at work right now running A/C service calls, but I have a question. You said If I have concerns regarding hacking or external interference, I would need to seek out a cyber security professional or company to assist me with those concerns.

My question is, I would hire a cyber security professional to look at things completely external to Comcast's communications

infrastructure, because again Comcast's internal investigations have concluded that the DOJ is in fact not in Comcast's communication infrastructure. Is that correct? Please advise.

Thank you,

Irving F. Rounds Jr.
246 Beacon Street Apartment 1
**Clinton, MA 01510**

Sent from my iPhone

Begin forwarded message:

From: "Falzone, Janice" <Janice_Falzone@comcast.com>
Date: June 22, 2018 at 8:48:20 AM EDT
To: Irving Rounds

<roundsmechanical@verizon.net>
Subject: RE: [EXTERNAL] Fwd: Comcast cable

If you have concerns regarding hacking or external interference, you would need to seek out a cyber security professional or company to assist you with those concerns. Thanks
Good morning Mr. Rounds,

When you first connected at your current service address you had Internet Plus bundle package, with no contract or service agreement other than the Residential Service agreement I provided you already, that all customers agree to by connecting service.

The only contract agreement you have is for the

EXHIBIT PAGE 272

XFINTIY Home service which I have sent you the link to that agreement in a separate email.

As for any documentation regarding our internal investigations to your claims, all I can provide to you is the fact that Comcast has determined that there is no issue with your service from a Comcast perspective. If you have concerns regarding hacking or external interference, you would need to seek out a cyber security professional or company to assist you with those concerns.

Thank you,
Janice Falzone
Executive Customer Relations
GBR Womens Network – Communications Co-Lead

Comcast|Greater Boston Region
Office: 888/309-2583 ext 5635352
**Monday – Friday 8:00 a.m. – 4:30 p.m.**

From: Irving Rounds
[mailto:roundsmechanical@verizon.net]
Sent: Friday, June 22, 2018 6:34 AM
To: Falzone, Janice
<Janice_Falzone@cable.comcast.com>
Subject: [EXTERNAL] Fwd: Comcast cable

Good morning Ms. Falzone,

I just received your Comcast agreement for
residential services yesterday afternoon. After
reviewing it, I would like to request a copy of the
original service agreement that I entered into
with Comcast when I originally signed up with

EXHIBIT PAGE 274

Comcast.

Before I decide to cancel my service with Comcast or retain it, I request a copy of the original service agreement I signed up for and a copy of your internal investigations regarding this matter. These are the investigations that you told me that were conducted by Comcast and had assured me that there was in fact nothing in Comcast's infrastructure that would be causing interruption to my Comcast digital signal.

These investigations had arose from after I have spoken with, texted and emailed senior representatives from Comcast of how the U.S. Department of Justice (DOJ) has been relentlessly harassing me in the form of jamming my Comcast digital service signal.

EXHIBIT PAGE 275

This has happened over the last year or so and as documented as such. I appreciate your corporation regarding this matter.

Thank you,

Irving F. Rounds JR.
246 Beacon Street Apartment 1
**Clinton, MA 01510**

Sent from my iPad

Begin forwarded message:

From: "Falzone, Janice"
<Janice_Falzone@comcast.com>

Date: June 15, 2018 at 4:10:12 PM EDT

To: "roundsmechanical@verizon.net" <roundsmechanical@verizon.net>

Subject: Comcast cable

Good afternoon Mr. Rounds,

This email is per your request regarding our conversation this afternoon.

Your three demands:

1.   Credit for the cost of you having to use an alternate fax
2.   The ability to use our local service centers fax machines to fax from
3.   A letter from Comcast putting the DOJ "on notice" to state that they need to stop

EXHIBIT PAGE 277

using the Comcast service to harass you

Have been respectfully declined. As discussed, I have also mailed to you a copy of our Residential Subscriber agreement as well for your review.

Thank you for speaking with me today and I wish you luck on your future endeavors.
Janice Falzone
Executive Customer Relations
GBR Womens Network – Communications Co-Lead
Comcast|Greater Boston Region
Office: 888/309-2583 ext 5635352
**Monday – Friday 8:00 a.m. – 4:30 p.m.**

HP Officejet Pro 8610 Series

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
|      |      |      |           | Digital Fax |    |        |
| May 10 | 3:33PM | Fax Sent | 17033833246 | 0:00 N/A | 26 | Error 363* |

* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

# EXHIBIT PAGE 279

**HP Officejet Pro 8610 Series**

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| May 10 | 3:54PM | Fax Sent | 17033833246 | 0:00 N/A | 16 | Error 363* |

* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

# EXHIBIT PAGE 280

**HP Officejet Pro 8610 Series**

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| May 10 | 4:02PM | Fax Sent | 17033833246 | 0:00 N/A | 36 | Error 390* |

\* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

# EXHIBIT PAGE 281

HP Officejet Pro 8610 Series

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| May 10 | 4:26PM | Fax Sent | 17033833246 | 0:00 N/A | 1 | Error 363* |

* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

# EXHIBIT PAGE 282

HP Officejet Pro 8610 Series

**Fax Log for**
Irving F. Rounds Jr.
978-706-7169
May 10 2018 7:55PM

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| | | | | Digital Fax | | |
| May 10 | 7:20PM | Fax Sent | 17033833246 | 0:00 N/A | 55 | Error 339* |

* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

# EXHIBIT PAGE 283

HP Officejet Pro 8610 Series

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| May 10 | 8:01PM | Fax Sent | 17033833246 | 0:00 N/A | 20 | Error 363* |

* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

# EXHIBIT PAGE 284

HP Officejet Pro 8610 Series

Fax Log for
Irving F. Rounds Jr.
978-706-7169
May 10 2018 8:50PM

## Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
|      |      |      |            | Digital Fax |    |        |
| May 10 | 8:26PM | Fax Sent | 17033833246 | 0:00 N/A | 51 | Error 363* |

* A communication error occurred during the fax transmission.
If you're sending, try again and/or call to make sure the recipient's
fax machine is ready to receive faxes. If you're receiving, contact
the initiator and ask them to send the document again.

# EXHIBIT PAGE 285